■ YVONNE HEYWARD, as Executrix of JAMES HEYWARD, Deceased, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant.—In a wrongful death action, the appeal is from a judgment of the Supreme Court, Queens County entered November 15, 1979, which, upon a jury verdict, was in favor of the plaintiff in the net principal sum of $70,000 after apportioning liability, 70% against the defendant and 30% against the plaintiff. Judgment reversed, on the law and the facts, with costs, and complaint dismissed. At about 10:00 P.M. on February 27, 1976, a Manhattan bound "E" subway train left its terminal at 179th Street in Jamaica, Queens. Several minutes later as it entered the 75th Avenue station, which is the fifth local stop on the Queens Boulevard IND line, the train suddenly came to an emergency stop. There were no witnesses to the occurrence. The motorman of the train, who was called as a witness on behalf of the plaintiff, testified that the train rounded a curve before entering the station and was traveling at about 20 to 23 miles per hour as it entered the station. The station was well lit and he could see the full length of the track in front of the platform prior to the emergency stop. However, he testified that he did not see anyone or anything on the tracks. After the train came to an emergency stop inside the station, the motorman descended to the tracks where he discovered the body of the decedent lying near the rail near the platform under the fourth car. Another witness called by the plaintiff, a former motorman for the defendant, testified that each subway car is equipped with two trippers, a metal arm several feet long and forked at the bottom, which is set in a vertical position underneath the car. There are trippers on each end of a car. According to the witness since the body of the decedent was found under the fourth car, the tripper at the rear of the third car had been activated, thereby resulting in the emergency application of the brakes. The decedent's wife, the plaintiff herein, testified that her husband had left their residence in Hempstead, Long Island, at about 7:00

P.M. in order to go to a Masonic Lodge meeting scheduled for 8:00 P.M. at a location on Putnam Avenue in the Bedford Stuyvesant section of Brooklyn. She knew of no reason why he would be at the 75th Avenue station in Queens. Similarly, the decedent's nephew, who testified for the Transit Authority, stated that earlier on the day of the accident, the decedent told him that he was going to a lodge meeting at 8:00 P.M. The witness did not know why the decedent would be in Kew Gardens. The decedent also told him that he had had one or two drinks that day. Dr. Donald Hoffman, a senior chemist with the New York City Medical Examiner's Office, testified that the autopsy revealed that the decedent's liver was positive for 0.22 percent alcohol. He concluded that the decedent was "significantly intoxicated" at the time of his death. Based on the proof adduced by the plaintiff on her direct case, we believe that she failed to make out a prima facie case of negligence on the part of the defendant Transit Authority. It would appear that the jury concluded, notwithstanding the testimony of the motorman, that the decedent had somehow fallen to the tracks from the station platform, and that therefore the motorman should have seen him and stopped the train in time. However, there is absolutely no proof to establish that the decedent was ever even in the station, let alone that he had fallen to the tracks from the platform. In fact, there was no evidence introduced that the decedent's body had been dragged, which would have permitted the inference that he was on the tracks when the train entered the station and could have been seen by the motorman. Rather, all the evidence points more logically to the conclusion that the decedent was actually on the train and that he fell to the tracks while trying to walk from one car to the next. This would explain why the motorman did not see anyone on the tracks and why the tripper on the third car was activated by his fallen body. This theory of the accident also flows logically from the failure of the plaintiff to present any proof as to why the decedent would be at the 75th Avenue station, which is a local stop and was nowhere near his destination. Even applying the favorable rules applicable to death cases (see, e.g., *Noseworthy v City of New York,* 298 NY 76), we find that there was not a shred of evidence, either direct or circumstantial, that the defendant or any of its employees were negligent or breached some duty. Unlike the cases cited by the plaintiff in her brief, here there was absolutely no causal link between any negligent act and the death of the decedent (see *Christian v New York City Tr. Auth.,* 74 AD2d 751). In any event, were we not to dismiss the complaint, we would order a new trial on the ground that the verdict is against the weight of the evidence (see *Reilly v New York City Tr. Auth.,* 34 NY2d 764, 766). We have considered the other points raised by plaintiff and find them to be without merit. Mangano, J. P., Gibbons, Rabin and Gulotta, JJ., concur.